AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of North Dakota

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

THE ELECTRONIC DEVICES CURRENTLY LOCATED AT THE FBI WILLISTON, ND RA, Address 4311 9th Avenue West, Williston, ND 58801

Case No. 1:23-mj-262

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ______________ District of North Dakota
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before June 5, 2023 *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to Clare R. Hochhalter.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ______________.

Date and time issued: May 22, 2023 · 1510 hrs.

*Judge's signature*

City and state: Bismarck, ND

Clare R. Hochhalter, United States
*Printed name and title*

EXHIBIT
tabbies
O

**Return**

| Case No.: 1:23-mj-262 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ________________

____________________________
*Executing officer's signature*

____________________________
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| IN THE MATTER OF THE SEARCH OF THE ELECTRONIC DEVICES CURRENTLY LOCATED AT THE FBI WILLISTON, ND RA, Address 4311 9th Avenue West, Williston, ND 58801 | Case No. 1:23-mj-262 |
|---|---|

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Randy Larkin, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—multiple electronic devices—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the FBI and have been since September 2015. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am currently assigned to the Minneapolis Division, Williston, North Dakota Resident Agency, of the FBI. I am tasked with investigating a number of criminal offenses including the investigation of drug trafficking organizations, complex financial crime, violent crime and assault within boundaries of Native American Indian Reservations, and crimes against children relating to material involving the sexual exploitation of minors. I have conducted or participated in physical and electronic

surveillance, interviewing subjects, witnesses, and victims, the execution of search warrants, arrests, and utilizing informants for controlled narcotics purchases. I hold a master's degree in Information Security and Computer Technology. Through my training, education, and experience, I have become familiar with cell phone communications and stored evidence on electronic devices.

3. I am submitting this affidavit in support of a search warrant authorizing a search of the electronic devices, which were seized during the course of the joint FBI and Williams County Sheriff's Office (WCSO) investigation of the destruction of an energy facility in Ray, North Dakota.

4. There is probable cause to believe that the devices belong to the subject, CAMERON MONTE SMITH (hereafter Smith), Year of Birth (YOB) 1974. The devices, more particularly described in Attachment A, which is incorporated by reference herein, constitute instrumentalities, fruits, and evidence of violations of Title 18, United States Code, Sections 1366 and 922 (Destruction of an Energy Facility and Firearms Offenses), as more fully detailed herein. I am requesting authority to search the computers, computer media, and digital data storage devices, seized during the course of the investigation.

5. The statements contained in this affidavit are based in part on information provided to me from Williams County Sheriff's Office (WCSO) detectives and other law enforcement officers. This affidavit is being submitted for the limited purpose of establishing probable cause. I have not included every detail of the investigation. In addition, unless otherwise indicated, all statements contained in this affidavit are summarized in substance and in part.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6. The property to be searched includes the following devices:

   a. GARMIN ETREX 22x Global Positioning System (GPS), blue in color, recovered from vehicle.

   b. SAMSUNG TABLET, Model: UNKNOWN, Serial Number: R52N6DXGZOL, black in color, recovered from vehicle.

   c. GATEWAY GWTC116-2BL, Serial Number: AE2GWTC116-2BL3J22G072228, blue in color, recovered from hotel room.

   d. WINDOWS TABLET, Model: UNKNOWN, Serial Number: UNKNOWN, black in color with leather case, recovered from hotel room.

   e. USB EXTERNAL HARD DRIVE, Model: GoalZero, orange in color, recovered from vehicle

   f. CANON POWERSHOT with accompanying SD card, Model: ELPH19015, red in color, recovered from vehicle

   g. SIM CARDS, Models: Chatr, Bell LTE, white in color, recovered from hotel room

   h. USB STORAGE DEVICES, recovered from hotel room

      i. One 16 GB PNY USB Storage Device, blue in color

      ii. One 64 GB PNY USB Storage Device, blue in color

      iii. One 32 GB NEXXTECH USB Storage Device, blue in color

      iv. One UNKNOWN MODEL USB Storage Device, blue in color

      v. One MINI UNKNOWN MODEL USB Storage Device, blue in color

      vi. One 64 GB KINGSTON USB Storage Device, black in color

(Hereafter "Subject Devices")

7. The applied-for warrant would authorize the forensic examination of the subject devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**PROBABLE CAUSE**

8. On May 13, 2023, WCSO deputies were dispatched to the Wheelock Substation, located in Ray, North Dakota. This facility is an electric power substation and is operated by Mountrail-Williams Electric Cooperative and Basin Electric Power Cooperative. Employees at the substation stated they responded to the substation on May 13, in the morning, after alarms indicated that equipment was not working. Once the employees arrived at the substation, they found bullet holes in multiple pieces of equipment, at which time they notified law enforcement. Law enforcement officers from the WCSO responded to the substation. The substation is enclosed by a barbed-wire fence approximately eight feet high. Outside the fence line, law enforcement recovered approximately five empty .450 Bushmaster cartridge cases. Law enforcement also determined that approximately fifteen bullets penetrated and damaged substation transformers and numerous electrical apparatuses. As a result of the damage that the bullets caused to the substation, approximately 243 customers lost electrical service. Based on a preliminary assessment by the Mountrail-Williams Electric Cooperative, the damages caused by the attack are expected to be well in excess of $100,000.

9. During a canvass of the area surrounding the substation, law enforcement located a vehicle approximately one-half mile southeast of the substation in the middle of an agricultural field. The vehicle appeared to be stuck in the mud and was not occupied. The owner of the land on which the vehicle was located stated, in sum and substance, the following: the vehicle was

not his; he did not know the registered owner of the vehicle; the vehicle was not there a few days ago when he seeded his farm; and he did not want the vehicle on his property. Law enforcement seized and entered the abandoned vehicle in an attempt to identify the owner and remove the vehicle from the property. Inside the vehicle, law enforcement located, among other items, a pill bottle, medical paperwork bearing the name Cameron Smith, and a black rifle case. After seeing evidence in the vehicle that appeared to be related to the substation attack, law enforcement discontinued the search of the vehicle and applied for a search warrant through the Williams County State's Attorney's Office. Law enforcement later executed the search warrant and completed its search of the vehicle. During the search, law enforcement seized a blue in color GARMIN ETREX 22x Global Positioning System (GPS) and a black in color SAMSUNG TABLET with serial number R52N6DXGZOL.

10. Law enforcement made contact with a tow truck driver (the "Tow Truck Driver") in an attempt to remove the vehicle from the property. The Tow Truck Driver informed law enforcement that, at approximately 9:45 am on May 13, 2023, the Tow Truck Driver had responded to 119th Street Northwest, which was approximately one and one-half miles east of the location of the abandoned vehicle to pick up an individual (later identified as Smith, as detailed further below) who needed assistance. The Tow Truck Driver drove Smith to 121st Avenue Northwest, approximately one-half mile south of the substation, where Smith walked east of the roadway to a vehicle stuck in a field. Smith entered the vehicle, removed two duffel bags and a collapsible wheeled cart, then returned to the tow truck with those items. The Tow Truck Driver drove Smith to a local hotel in Williston, North Dakota, and the driver left Smith at the hotel. A few hours later, the Tow Truck Driver received a phone call from Smith from a restricted number. Smith asked for assistance in recovering his vehicle from the field. The Tow

Truck Driver stated that he would only assist Smith if Smith provided the Tow Truck Driver with Smith's name and telephone number. Smith provided the Tow Truck Driver with the name "Cam Smith" and a telephone number with a 647 area code (the "647 Cellphone").

11. Law enforcement responded to the hotel and made contact with hotel staff. Hotel staff indicated they had a guest obtain a room at the hotel earlier that morning under the name Cameron Smith and provided law enforcement with a copy of Smith's Canadian passport, as well as a copy of Smith's guest registration, on which Smith provided the hotel with the 647 Cellphone.

12. Law Enforcement obtained and executed a search warrant for Smith's hotel room and person through the Williams County State's Attorney's Office. Smith was detained and transported to the Williams County Correctional Center on suspicion of Criminal Mischief. Law enforcement located two identification cards inside Smith's hotel room with the name "Cameron Smith" on each identification card. Law enforcement also seized a blue in color GATEWAY GWTC116-2BL, Serial Number: AE2GWTC116-2BL3J22G072228 (*see supra* ⁋ 6.c.), a black in color with a leather case WINDOWS TABLET (*see supra* ⁋ 6.d.), a wallet containing two SIM cards, and six, blue and black in color, USB storage devices (*see supra* 6.h.).

13. Due to adverse weather conditions, mainly, heavy rain, law enforcement executed the search warrant for the vehicle recovered in the field at the Williams County Sheriff's Office Cold Storage garage. Inside the vehicle, among other items, law enforcement located approximately 166 live rounds of .450 Bushmaster ammunition and two muddy shoes. Law enforcement also seized from the vehicle a GARMIN ETREX 22x Global Positioning System (*see supra* ⁋ 6.a.), a SAMSUNG TABLET (*see supra* ⁋ 6.b.), a CANON POWERSHOT camera

with accompanying SD card (*see supra* ⁋ 6.f.), and a USB EXTERNAL HARD DRIVE, orange in color (*see supra* ⁋ 6.e.).

14. On May 14, 2023, law enforcement was able to review the hotel's security camera footage to determine that Smith departed the hotel at approximately 11:50 am on May 13, 2023, carrying two duffel bags and a collapsible wheeled cart. One bag appeared to be grey in color with a red zipper, and the other bag appeared to be green and blue in color. Law enforcement continued reviewing security camera footage from businesses in the area of the hotel to track Smith's movements. Smith was seen pacing around the parking lot and surrounding property of a local business in Williston, North Dakota. At approximately 12:50 pm, Smith was seen on security camera footage walking west on 42nd Street, away from the local business, carrying the duffel bags and collapsible wheeled cart. Smith left the view of the security cameras at approximately 12:57 pm, at which time he can be seen walking east on 42nd Street, towards the same local business, but he was not carrying the duffel bags. Law enforcement canvassed the area surrounding the local business. Law enforcement later obtained additional security camera footage showing Smith walking east on 42nd Street on the north side of an apartment building. Smith can be seen turning south into the eastern-most parking lot of the apartment building—between an apartment building and a row of garage buildings.

15. Law enforcement located a dumpster on the property of the apartment building and accessible by the public. The dumpster was located directly south of the northeastern-most garage building. Inside the dumpster, law enforcement located a grey REI-brand duffel bag with a red zipper and a green and blue duffel bag. Both bags located in the dumpster matched the description of the bags that Smith was seen carrying on the hotel's security camera footage. Inside the grey duffel bag, law enforcement located a black .450 Bushmaster rifle bearing serial

number BK5091719 and two live rounds of .450 Bushmaster ammunition. Inside the green and blue duffel bag, law enforcement located sixteen .450 Bushmaster rifle magazines, approximately 135 live rounds of .450 Bushmaster ammunition, a 9mm Sig Sauer pistol bearing serial number 58C012701, four pistol magazines for the Sig Sauer pistol, and approximately 104 live rounds of 9mm ammunition.

16. Law enforcement conducted an additional canvas of the area in which Smith's vehicle was recovered. Law enforcement located tire tracks through the fields between 119th Avenue Northwest and the location in which Smith's vehicle was recovered. Law enforcement also located footprints on the ground between where Smith's vehicle was recovered and 119th Avenue Northwest, indicating an eastern direction of travel, towards 119th Avenue Northwest.

17. On May 15, 2023, an FBI Special Agent spoke via telephone with a Deportation Officer from the United States Immigration and Customs Enforcement ("Officer-1"). Officer-1 attempted to perform an immigration inspection of Smith. During the immigration inspection of Smith, Smith admitted that he and his parents are citizens of Canada. Smith refused to say when he last entered the United States. Officer-1 queried databases and found no evidence that Smith had legally entered the United States since last departing the United States in 2018, in which he traveled from Portland, Oregon, to Vancouver, British Columbia, Canada, via Amtrack train. Officer-1 also found no evidence that Smith had any applications or petitions pending or approved before the United States Citizenship and Immigration Services, or that Smith had applied for a visa through the United States Department of Homeland Security to enter the United States legally. Immigration officials have placed a detainer on Smith alleging that he is removable due to his status as unlawfully present in the United States.

18. Based on the facts of the case, I know that Smith is a Canadian citizen, was in possession of a Canadian driver's license, and was driving a car with state of Oregon plates. It is reasonable to believe that Smith traveled from outside of the state to commit criminal activity inside the state of North Dakota. From my training and experience, I know that individuals who travel will utilize Global Positioning Systems (GPS) in order to obtain turn by turn directions to arrive at a location. I know that GPS devices store location information and specific addresses. A search of the device is expected to provide law enforcement with additional addresses and locations related to the criminal activity.

19. From training and experience, I know that individuals that commit criminal activity will use computers and tablets to, among other things, download maps, research and plan additional locations for criminal activity, communicate with co-conspirators, download propaganda that promotes extremist ideology, and purchase items to facilitate the criminal activity. I know that Smith was in possession of firearms and ammunition, ski masks, duffel bags, flashlights, ear protection, and other various tools. A search of the computer and tablet devices is expected to yield additional evidence of the research and purchase of the aforementioned items related to the criminal activity. Based on training and experience, an attack of a power substation of this nature was likely not a spur of the moment crime of opportunity. Instead, the attack was likely planned well in advance, including by researching the specific substation to attack, the best route to travel to arrive at the substation, acquiring and transporting firearms and ammunitions to the substation, and where, precisely, to shoot at the substation for the attack to be successful. Accordingly, there is probable cause to believe that Smith's electronic devices will contain evidence of the subject offenses, including his advanced planning and the means and methods by which he planned and carried out this attack.

20. From training and experience, I know that individuals utilize USB drives (removable media) to transfer and store photos and documents between devices. A search of the USB drives is expected to yield additional photos and documents related to the criminal activity.

**TECHNICAL TERMS**

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).

Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

h. SIM Card: A Subscriber Identity Module (SIM) card contains a unique serial number, which is used to identify and authenticate subscribers on a mobile network. Phones, smart watches, cameras, and computers all may contain SIM cards, depending on the device's ability to connect to a mobile network.

22. Based on my training, experience, and research, I know that the Subject Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and an internet enabled device with IP addresses. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

24. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to communicate with victims, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

25. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**ACCESSIBILITY OF THE DEVICES**

27. Your Affiant knows from training and experience, as well as from information found in publicly available materials, that Apple Inc. ("Apple"), Motorola, and Samsung, among other companies, produce devices (such as phones and tablets) that can be unlocked via the use of a fingerprint or thumbprint (collectively, "fingerprint") or facial recognition in lieu of a numeric or alphanumeric passcode or password. Different companies have different names for their fingerprint sensor feature or facial recognition feature; for example, Apple's fingerprint recognition feature is called "Touch ID" and its facial recognition feature is called "Face ID."

28. Once a user has set up the fingerprint sensor feature or facial recognition feature in the security settings of the device, the user can unlock the device by placing a finger or thumb on the device's fingerprint sensor or simply holding the camera in front of the user's face. If the fingerprint sensor recognizes the fingerprint or the camera recognizes the face, the device unlocks. Most devices can be set up to recognize multiple prints, so that different prints, not

necessarily from the same person, will unlock the device. Some devices with the facial recognition feature can also be set up to recognize more than one user's face. Your Affiant has learned that users of devices with a fingerprint sensor feature or facial recognition feature often enable it because it is considered to be a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user of the device is engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

29. In some circumstances, fingerprint sensors or facial recognition will not work, and a passcode must be entered to unlock the device. For example, with Apple Touch ID and Face ID, a passcode or password must be used when: (1) more than 48 hours has passed since the last time the device was unlocked and (2) the device has not been unlocked via Face ID in 4 hours and the passcode or password has not been entered in the last 6 and a half days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or restarted; (2) the device has received a remote lock command; or (3) five unsuccessful attempts to unlock the device via Touch ID or Face ID are made. Other brands have similar restrictions.

30. The passcode or password that would unlock the devices found during the search are not known to law enforcement. Thus, it will likely be necessary to hold the camera in front of the users or press the fingers of the users of any facial recognition or fingerprint sensor-enabled devices, which fall within the scope of the warrant, in an attempt to unlock the devices for the purpose of executing the search authorized by this warrant. Attempting to unlock the relevant devices with the use of the fingerprints of the users is necessary because the agents may not

otherwise be able to access the data contained on those devices for the purpose of executing the searches authorized by this warrant.

31. Although Your Affiant does not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on training and experience Your Affiant knows that it is common for a user to unlock a fingerprint sensor-enabled device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock any devices as described above, successive failed attempts will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

32. Due to the foregoing, I request that the Court authorize law enforcement to use reasonable force, if necessary, to press the fingers (including thumbs) of the devices user to the device or hold the device in front of the face of the user.

**CONCLUSION**

33. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the devices described in Attachment A to seek the items described in Attachment B.

Respectfully Submitted,

Randy Larkin
Special Agent
Federal Bureau of Investigation

SWORN TO AND SUBSCRIBED BEFORE ME THIS 22nd DAY OF May, 2023.

HONORABLE CLARE R. HOCHHALTER
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is described below with accompanying photographs. The devices were seized pursuant to search warrants authorized by the District Court of Williams County, North Dakota. The devices are currently in the custody of the FBI Williston, ND RA, address 4311 9th Avenue West, Williston, ND 58801.

This warrant authorizes the forensic examination of the devices for the purpose of identifying the electronically stored information described in Attachment B.

GARMIN ETREX 22x Global Positioning System (GPS), blue in color, recovered from vehicle.



SAMSUNG TABLET, Model: UNKNOWN, Serial Number: R52N6DXGZOL, black in color, recovered from vehicle.



GATEWAY GWTC116-2BL, Serial Number: AE2GWTC116-2BL3J22G072228, blue in color, recovered from hotel room.



WINDOWS TABLET, Model: UNKNOWN, Serial Number: UNKNOWN, black in color with leather case, recovered from hotel room.



USB EXTERNAL HARD DRIVE, Model: GoalZero, orange in color, recovered from vehicle



CANON POWERSHOT with accompanying SD card, Model: ELPH19015, red in color, recovered from vehicle




SIM CARDS, Models: Chatr, Bell LTE, white in color, recovered from SMITH's personal property



USB STORAGE DEVICES, recovered from hotel room. One 16 GB PNY USB Storage Device, blue in color. One 64 GB PNY USB Storage Device, blue in color. One 32 GB NEXXTECH USB Storage Device, blue in color. One UNKNOWN MODEL USB Storage Device, blue in color. One MINI UNKNOWN MODEL USB Storage Device, blue in color. One 64 GB KINGSTON USB Storage Device, black in color.





**ATTACHMENT B**

1. All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 1366 (Destruction of an Energy Facility) and 18 U.S.C. § 922 (Firearms Offenses), since October 1, 2022, including:

a. lists of energy facilities or geographic areas containing energy facilities;

b. call history of the Devices;

c. saved contact information;

d. photographs related to firearms and energy facilities;

e. text messages;

f. any electronic correspondence related to firearms and energy facilities;

g. types, amounts, and prices of firearms or other destructive materials used to prepare to destroy energy facilities;

h. any information related to corroborating partners or other individuals involved in the aforementioned criminal activity (including names, addresses, phone numbers, or any other identifying information);

i. any information reference travel or location of the user;

j. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes the search of the property described for the items listed in Attachment A.